UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MERINO HERON-CORTES,<br>Petitioner,<br>v.<br>BRUCE SCOTT, et al.,<br>Respondents. | Case No. C26-3596-SKV<br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

Pro se Petitioner, Merino Heron-Cortes ("Petitioner"), is currently being held by U.S. Immigration and Customs Enforcement ("ICE") in detention at the Northwest ICE Processing Center ("NWIPC"). Dkt. 5. He filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. *Id.* He challenges the constitutionality and legality of his detention and in particular the adequacy of a bond hearing, wherein an Immigration Judge ("IJ") denied bond and ordered that he remain detained because he failed to show he is not a danger or flight risk. *Id.* at 5. He seeks immediate release from custody and related relief. *Id.* at 37.

The Petition is supported by Petitioner's Declaration. Dkt. 5 at 40–43 ("Heron Cortes Decl."). Respondents filed a corrected return, Dkt. 12-1, together with a corrected Declaration of Deportation Officer Christopher Hubbard, Dkt. 12-2 ("Hubbard Decl."), and a Declaration of

Assistant United States Attorney Katherine G. Collins, Dkt. 10 ("Collins Decl.").[1] The latter attaches and attests to the authenticity of Petitioner's Bond Record of Proceedings. Dkt. 11 ("Collins Decl., Ex. A"). Petitioner filed a traverse in reply. Dkt. 15. Both parties have filed supplements to update the Court as to the status of Petitioner's appeals. Dkts. 17–20. Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition, Dkt. 5, for the reasons set forth below.

## I. BACKGROUND

Petitioner is a native and citizen of Mexico who has lived in the United States since 2005. Heron-Cortes Decl., ¶ 2; Hubbard Decl., ¶ 4. He entered the United States at an unknown place and time, without inspection. Hubbard Decl., ¶ 4. On March 27, 2018, Petitioner was arrested in Oregon on a DUI charge. *Id.*, ¶ 5. That DUI charge was dismissed on March 7, 2019.[2] *Id.*; *see also* Collins Decl., Ex. A at 141–59. ICE briefly detained Petitioner following his 2018 arrest, and Petitioner states that he was "released shortly thereafter and left at liberty for all those years until May 25, 2026, when I was re-detained without any due process." Heron-Cortes Decl., ¶ 3; *see also* Collins Decl., Ex. A at 7 (Form I-213) (reflecting that ICE encountered petitioner on March 28, 2018, and he was "released prior to any enforcement action being initiated.").

Petitioner says that ICE redetained him without warning on May 25, 2026. Dkt. 5 at 3; *see also* Heron-Cortes Decl., ¶ 4. ICE agents encountered Petitioner on that date, either after he attended court for a misdemeanor charge, *id.*, or as he exited jail after having been arrested "for driving under the influence." Dkt. 12-1 at 4 (citing Hubbard Decl., ¶ 7). ICE took Petitioner into

---

[1] Respondents filed a corrected return and declaration because "at the time of filing of Federal Respondent's prior Return, Immigration and Customs Enforcement was not aware that Petitioner had filed an appeal of the immigration judge's bond denial, when he had." Dkt. 12 at 2.

[2] The record indicates that the 2018 offense was dismissed after Petitioner successfully completed a pretrial diversion program. *See* Collins Decl., Ex. A at 141–59.

immigration custody, charged him with inadmissibility under INA § 212(a)(6)(A)(i), and transferred him to the NWICP. Hubbard Decl., ¶ 7.

The challenged bond hearing was conducted pursuant to a habeas order issued by this Court in response to Petitioner's first habeas petition. *Torres-Padilla et al. v. Hernandez et al.*, C26- 2343-TMC, slip op. at 3 (W.D. Wash. July 13, 2026). The Court concluded that 8 U.S.C. § 1226(a) entitled Petitioner to a bond hearing to assess flight risk and danger to the community before he could be held in immigration-related detention, and the Court ordered that Respondents timely provide him with such a hearing on his request or release him. *Id.* (incorporating the reasoning of *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025), *aff'd*, 183 F.4th 1160 (9th Cir. 2026)).

In accordance with the first habeas order, Petitioner filed a Motion for Bond Redetermination and supporting evidence, and he appeared with counsel before an IJ for a bond hearing on August 20, 2026. Collins Decl., Ex. A at 11–168 (motion and exhibits); *id.* at 1–3 (08/20/26 IJ Order). Attachments to his motion included the birth certificates of his U.S. citizen children, *id.* at 24–25; income tax returns and W-2s for over ten years, *id.* at 28–81; earnings and insurance statements, *id.* at 82–118; support letters from family and friends, *id.* at 121–41; court records from the 2018 DUI charge, *id.* at 142–69; and records from Oregon and Multnomah County showing no record of a 2026 DUI charge under his name, *id.* at 160-69.

The Department of Homeland Security ("DHS") submitted Petitioner's Form I-213 Record of Deportable/Inadmissible Alien. *Id.* at 4–8. Beyond basic demographic facts relevant to Petitioner's immigration status, the three-page Form I-213 contains a description of his 2018 and 2026 arrests, and no further narrative. *Id.*

The IJ concluded that Petitioner failed to bear the burden of showing that he is not a danger or flight risk and ordered him detained without bond, memorializing this finding on a checkbox form. Hubbard Decl., ¶ 8; Dkt. 11 at 2–3 (8/20/26 Order of IJ). The administrative record of the bond hearing "does not contain an audio recording or a transcript of any bond hearing." Dkt. 10 at ¶ 2. Although Petitioner appealed the bond denial decision on September 21, 2026, Dkt. 12-2 at ¶¶ 8–9, "the record does not contain an indication that the immigration judge has authored a bond memorandum at this point in the appeal process." Dkt. 12-1 at 5.

Petitioner's appeal remains pending as of the completion of briefing in this matter. *Id.* Petitioner has also appealed an intervening merits determination ordering his removal, and it is undisputed that Petitioner remains detained under 28 U.S.C. § 1226(a). Dkt. 20.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

This Court has jurisdiction to review bond hearings for errors of law, including as to whether the IJ properly found danger to the community or flight risk. *Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024). The standard of review in such cases is abuse of discretion, under which the court determines whether the IJ applied the correct legal standard without reweighing evidence. *Id.* at 784–85.

///

## III. DISCUSSION

In his 42-page handwritten submission, Petitioner contests the legality of his detention and requests release on two primary bases: he challenges the legality "of the manner in which I was brought into detention in the first place" and "the deficient bond hearing that followed." Dkt. 5 at 5. Because this Court addressed the statutory basis for his detention in response to his first habeas petition and ordered a bond hearing, *see Torres-Padilla*, slip op. at 1–3, the Court now focuses on Petitioner's arguments regarding the legality of his redetention and the adequacy of his bond hearing.

Petitioner argues that his redetention without individualized consideration violates due process and that his post-deprivation bond hearing did not cure that violation. Dkt. 5 at 21–22. Petitioner states that he presented "ample evidence" at the bond hearing that he is not a danger or flight risk, and that the government presented no contrary evidence. *Id*. at 12–13. He argues that it was an abuse of discretion for the immigration judge to deny him bond because the judge "made no mention at the hearing [of] the *Guerra* factors and gave no reasons for his decision to deny bond." *Id*. at 10. He further argues that his ongoing detention without a meaningful individualized justification violates due process under *Mathews v. Eldridge,* 424 U.S. 319 (1976). *Id*. at 22.

In opposition, Respondents argue that Petitioner's appeal of the IJ's bond denial is pending adjudication and that he has failed to establish a basis for waiving the requirement that he exhaust administrative remedies before seeking this Court's intervention. Dkt. 12-1 at 2. Respondents argue that the manner of his detention was lawful and that 8 U.S.C. § 1226(a) did not require a pre-deprivation hearing. *Id*. at 6. Respondents also argue that the *Mathews* factors do not favor release. Respondents distinguish this case from those in which a noncitizen "who

has previously been detained by immigration officials and then subsequently released" relies on an "'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release," and that Petitioner's recent arrest would justify revocation had that been the case. *Id.* at 8.

**A. Exhaustion of Administrative Remedies**

In cases brought under § 2241, exhaustion is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). The Court may waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). The party seeking waiver of exhaustion bears the burden to show one of the *Laing* factors applies. *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

The Court finds it appropriate to waive the exhaustion requirement here, under *Laing*, as administrative remedies are "inadequate or not efficacious" and "irreparable injury would result." *Laing*, 370 F.3d at 1000; *see also Ascencio-Zetino v. Scott*, 2:26-CV-02856-DGE, 2026 WL 2686835, at *3-4 (W.D. Wash. Sept. 14, 2026). Recent government data reflects an average processing time of 204 days for Board of Immigration Appeals ("BIA") bond appeals. *Rodriguez Vazquez*, 802 F. Supp. 3d at 1307. Accordingly, the Court proceeds to consider the merits as to the manner of Petitioner's redetention and the adequacy of the IJ's bond determination.

///

///

**B. *Mathews* and Due Process**

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332 (omissions added). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n. 4 (W.D. Wash. 2025) (collecting cases).

Respondents argue that Petitioner has received the process to which he is due, distinguishing this case from those in which a noncitizen "who has previously been detained by immigration officials and then subsequently released" relies on an "'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release," and that Petitioner's recent arrest would justify revocation as a "changed circumstance" had he been released on supervision. Dkt. 12-1 at 8 (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL

2677089, at *3 (W.D. Wash. Sept. 17, 2025); *Martinez Hernandez v. Mullin*, 2:26-CV-02034-TLF, 2026 WL 1998571, at *5 (W.D. Wash. July 10, 2026)). The Court disagrees and finds that, under *Mathews*, Petitioner's redetention did not comport with due process.

*1. Petitioner had a liberty interest in remaining free.*

Applying the *Mathews* factors to the facts of this case, it is clear that Petitioner had a liberty interest in remaining free. He lived in this country for over 20 years. Heron Cortes Decl., ¶ 2. Respondents' materials reflect that Petitioner was encountered by ICE in 2018 and released. Dkt. 11 at 7. ICE made a choice as to how they dealt with Petitioner at that time, and that encounter and release created a liberty interest. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). As Petitioner puts it, ICE knew he was here by 2018, but he was "left at liberty for all those years" until his sudden redetention. Heron Cortes Decl., ¶ 3. Accordingly, there has been a deprivation of liberty interest here.

*2. There was a high risk of erroneous deprivation.*

As for the second *Mathews* factor, the Court finds there was a high risk of erroneous deprivation when Petitioner, having been released to live the United States, was redetained without notice or an opportunity to be heard. Although there is documentation as to why Petitioner came to the attention of law enforcement—Officer Hubbard and the Form I-213 state that he was arrested for DUI—the record also suggests that the relevant authorities may have released him during the pendency of that charge. *See* Hubbard Decl., ¶¶ 6–7 (describing DUI charge as "pending" and stating that ICE officers encountered Petitioner "as he exited the Clackamas County (Oregon) Jail"); Heron Cortes Decl., ¶ 4 ("I was redetained while coming from my court proceeding."). The record contains no indication that ICE gave any consideration to factors warranting his redetention or weighed them against his apparent liberty interest.

Additionally, Petitioner provides some evidence that no 2026 DUI charge was formally filed against him, Collins Decl., Ex. A at 160–69, and Respondents provide no evidence that he was formally charged with DUI, other than Officer Hubbard's Declaration and the Form I-213. *Id.* at 6–10 (Form I-213); Hubbard Decl., ¶¶ 6–7. This factual uncertainty suggests the need for further safeguards against erroneous deprivation.

The *Mathews* analysis looks to the risk of an erroneous deprivation of the relevant interest through the governmental procedures used, and the probable value, if any, of additional or substitute safeguards. *Mathews*, 424 U.S. at 335. The circumstances of Petitioner's redetention show that additional, pre-deprivation process would have been valuable in ensuring such error did not occur. Providing notice and a pre-deprivation hearing would have provided an opportunity for Petitioner to challenge the factual bases for his redetention. This factor weighs in favor of Petitioner.

*3. The Government's interest did not justify forgoing pre-deprivation process.*

Finally, the Government's interest in redetaining Petitioner without notice or an opportunity to be heard was low. The Government certainly has an interest in immigration enforcement, which includes, for example, ensuring noncitizens appear at future proceedings, protecting the public from dangerous noncitizens, prompt execution of removal orders, and preventing noncitizens from "remaining in the United States in violation of our law." *Demore v. Kim*, 538 U.S. 510, 518 (2003); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022).

Respondents point to Petitioner's recent arrest as justifying his redetention without pre-deprivation hearing. Dkt. 12-1 at 9–10. However, as discussed above, the procedure used here leaves unanswered questions as to whether his ongoing civil detention is justified, and

Respondents do not articulate an interest advanced by Petitioner's redetention that would have been undermined by first providing pre-deprivation process. Nor do Respondents argue the law compelled it. *See, e.g.*, 8 U.S.C. § 1226(c)(1). Even where the government believes it has a lawful basis to redetain a noncitizen, it must still "effectuate the detention in a manner that comports with due process." *E.A. T.-B.*, 795 F. Supp. 3d at 1322.

In sum, the *Mathews* factors favor Petitioner. Given the liberty interest at stake, the high risk of erroneous deprivation, and the governmental interest alleged, "providing effectively no pre-detention process to Petitioner[] here was constitutionally deficient." *Aucatoma v. Hernandez*, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *see also Subham v. Noem*, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026).

**C. IJ Reasoning**

Turning to the post-deprivation bond hearing provided to Petitioner, the Court finds that it was an abuse of discretion to deny bond on the record before the Court. To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). *Martinez*, 124 F.4th at 783 (listing factors). The IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *In re Guerra*, 24 I. & N. Dec. at 40.

Petitioner urges that his evidentiary submissions demonstrate that he is not a danger or flight risk, including twenty years' residence, two children who are United States citizens, and substantial ties in the United States, including a history of paying taxes and consistent employment. Dkt. 5 at 10–13. He argues that the IJ did not meaningfully weigh or consider Petitioner's positive equities in his decision and made no mention of the *Guerra* factors. *Id.*

Respondents make no substantive challenge to this argument. At most, Respondents suggest that the IJ would have an opportunity to explain his reasoning in a bond memorandum, if the Court allowed Petitioner to remain detained pending his appeal of the IJ's decision. Dkt. 12-1 at 12.

Because the IJ's decision is recorded only on a check-box form, there is no information in the record concerning evidence the IJ considered, the legal standard he applied, or whether or how he weighed the *Guerra* factors. This Court has found similar conclusory bond decisions to constitute an abuse of discretion, and nothing here compels a different result. *See Ascencio-Zetino*, 2026 WL 2686835, at *9–10 ("The Court can see no reason why Petitioner's bond request was denied."); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) ("The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors. The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion.").

For example, *Salas Jimenez v. Scott*, C26-3733-DGE, slip op. (W.D. Wash. Nov. 4, 2026), considered a Petitioner with similar factual circumstances, including over twenty years residence, a U.S. Citizen child, and recent criminal charges but "no evidence these charges led to convictions." *Id.* at 7. The Court reasoned: "[t]he petition presents a now familiar fact pattern in which a detained noncitizen is left to wonder the reasons why an IJ denied their bond request, and a familiar argument by Respondents that a detained individual should be required to exhaust administrative remedies to learn the reasons why their bond request was denied." *Id.* at 6 (collecting cases). As in *Salas Jimenez*, Petitioner presented evidence relevant to the *Guerra* analysis, and there is no indication that the IJ meaningfully engaged with that evidence. And, while Respondents allude to the 2018 and 2026 charges, "this Court, and Petitioner, has no record of how these allegations may have factored into the IJ's decision." *Id.* at 7. Accordingly,

Petitioner has established that the IJ's danger and flight risk findings were an abuse of discretion and that he was not provided a constitutionally sufficient bond hearing. *See id.*

**D. Remedy**

Petitioner requests immediate release from custody, while Respondents suggest only that he remain detained pending his administrative appeals. Where the *Mathews* factors favor Petitioner, habeas relief, and specifically release from immigration custody, is the appropriate and constitutionally required remedy. *See Aucatoma*, 2026 WL 1265541, at *8 (and the cases cited therein). In similar circumstances, courts in this District have found no basis for continuing to detain petitioners and ordered their immediate release. *See, e.g.*, *Segura Serrano v. Scott*, 2:26-CV-01268-LK, 2026 WL 1674357, at *9 (W.D. Wash. May 26, 2026); *Loya Medina v. Hernandez,* 2:26-CV-00772-GJL, 2026 WL 1260848, at *8–9 (W.D. Wash. May 7, 2026); *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. . . . The typical remedy for such detention is, of course, release.") (citations omitted). The Court here similarly finds no basis for Petitioner's continued detention and orders his immediate release with reasonable conditions of supervision, if warranted.

Because the injury alleged on this ground is remedied by the Court's grant of immediate release and because disposition of additional constitutional claims would not materially alter the outcome of this case, the Court declines to reach Petitioner's additional arguments. *See Tran v. Blanche*, 2:26-CV-01782-GJL, 2026 WL 1998568, at *5 (W.D. Wash. July 10, 2026).

Petitioner requests that the Court order him released in a public place in Portland, Oregon so that he can be picked up by his family. Dkt. 5 at 37. He also requests that Respondents be enjoined from redetaining him without giving him a pre-deprivation hearing and from using

restrictive conditions of release, GPS monitoring, and ankle monitoring. *Id.* Petitioner provides no factual support justifying these requests. That is, he makes no showing that he bears individual risk of being released in a manner that will not allow him to arrange for pickup, or that he will be redetained without due process or fitted with GPS or ankle monitoring. On the limited record, these requests are DENIED without prejudice based on the absence of relevant factual development or engagement in legal analysis. Nothing prevents Petitioner from seeking habeas relief in the future, should he deem it necessary.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the habeas petition, Dkt. 5, and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours with reasonable conditions of supervision. Respondents shall file a notice with the Court within 48 hours that Petitioner has been released. Petitioner's remaining requests for relief are DENIED. Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 25th day of November, 2026.

S. KATE VAUGHAN
United States Magistrate Judge